# Syllabus

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

PEOPLE v PEELER
PEOPLE v BAIRD
PEOPLE v LYON

Docket Nos. 163667, 163672, and 164191. Argued on application for leave to appeal May 4, 2022. Decided June 28, 2022.

Nancy Peeler (Docket No. 163667), Richard L. Baird (Docket No. 163672), and Nicolas Lyon (Docket No. 164191) were charged with various offenses in the Genesee Circuit Court for actions they took as state employees during the Flint water crisis. The cases did not proceed by the prosecutor issuing criminal complaints and then holding preliminary examinations in open court at which defendants could have heard and challenged the evidence against them. Instead, at the request of the Attorney General's office, the prosecutor proceeded under MCL 767.3 and MCL 767.4, which authorize the use of a "one-man grand jury." Judge David Newblatt served as the one-man grand jury, considered the evidence behind closed doors, and then issued indictments against defendants; defendants' cases were assigned to a Genesee Circuit Court judge. Peeler and Baird moved to remand their cases for a preliminary examination, but the court, Elizabeth A. Kelly, J., denied the motion, holding that indicted persons have no right to a preliminary examination. Peeler and Baird filed interlocutory applications for leave to appeal in the Court of Appeals, challenging the Genesee Circuit Court's denial of their motions for a preliminary examination; the Court of Appeals denied leave. Lyon moved to dismiss the charges against him, arguing that he had a statutory right to a preliminary examination, that MCL 767.3 and MCL 767.4 did not confer the one-man grand jury with charging authority, and that those statutes violated the separation-of-powers doctrine and the right to due process; the Genesee Circuit Court denied the motion. Lyon filed in the Court of Appeals an interlocutory application for leave to appeal that decision. Peeler and Baird sought leave to appeal the Court of Appeals' denial of their applications in the Michigan Supreme Court, and Lyon sought leave to appeal the Genesee Circuit Court's decision in the Michigan Supreme Court prior to a decision by the Court of Appeals. The Supreme Court ordered and heard oral argument on whether to grant the applications for leave to appeal or take other action. *People v Peeler*, 509 Mich ___ (2022); *People v Baird*, 509 Mich ___ (2022); *People v Lyon*, 509 Mich ___ (2022).

In a unanimous opinion by Chief Justice MCCORMACK, the Supreme Court, in lieu of granting leave to appeal, *held*:

If a criminal process begins with a one-man grand jury under MCL 767.3 and MCL 767.4, the accused is entitled to a preliminary examination before being brought to trial. *People v Green*, 322 Mich App 676 (2018), was overruled to the extent it held that the one-person grand-jury procedure serves the same function as a preliminary examination. The Genesee Circuit Court erred by denying Peeler's and Baird's motions to remand for a preliminary examination. Further, while MCL 767.3 and MCL 767.4 authorize the use of a one-man grand jury to investigate, subpoena witnesses, and issue arrest warrants, those statutes do not authorize that one-man grand jury to issue an indictment initiating a criminal prosecution. The Genesee Circuit Court therefore also erred by denying Lyon's motion to dismiss.

1. The one-man grand-jury statutes were enacted because (1) law enforcement agencies are sometimes unable effectively and lawfully to enforce the laws, particularly with regard to corruption by government officials and (2) the common-law 23-man grand jury is cumbersome and ineffective in the investigation of those crimes. MCL 767.3 and MCL 767.4 authorize a judge to investigate, subpoena witnesses, and issue arrest warrants. Specifically, MCL 767.3 provides that whenever by reason of the filing of any complaint, which may be upon information and belief, or upon the application of the prosecuting attorney or attorney general, any judge of a court of law and of record has probable cause to suspect that any crime, offense, or misdemeanor has been committed within their jurisdiction and that any persons may be able to give any material evidence respecting such suspected crime, offense, or misdemeanor, the judge may order that an inquiry be made into the matter and conduct the inquiry. In turn, MCL 767.4 provides that if upon such inquiry the judge shall be satisfied that any offense has been committed and that there is probable cause to suspect any person to be guilty thereof, the judge may cause the apprehension of that person by proper process and, upon the return of the process served or executed, the judge having jurisdiction shall proceed with the case, matter, or proceeding in like manner as upon formal complaint. MCL 767.4 further provides, in relevant part, that the judge conducting the inquiry under MCL 767.3 is disqualified from acting as the examining magistrate in connection with the hearing on the complaint or indictment and from presiding at any trial arising therefrom.

2. MCL 767.4 provides a right to a preliminary examination. MCL 767.4 refers to a "hearing on the complaint or indictment" and disqualifies the judge who conducted the inquiry from being the "examining magistrate" at that hearing. It is unclear what "hearing" that language could be referring to other than a preliminary examination. Moreover, "examining magistrate" is a term of art used in other statutes; it refers to a judge who conducts a preliminary examination. The statute further provides that the judge should treat a one-man-grand-jury-charged case the same as a case in which a formal complaint has been filed. Thus, a judge should treat a case brought using a one-man grand jury the same as a case in which a formal complaint is filed: an arrest warrant is issued after the formal complaint is filed, the accused is apprehended, and the court holds a preliminary examination before the information may issue. This conclusion is also supported by historical practice; preliminary examinations have been routinely conducted after a one-person grand jury returned an indictment. The preliminary examination is not redundant in this situation, even though the statute requires the judge to find probable cause to believe the defendant committed the crime, because the probable cause necessary for a bindover is greater than that required for an arrest. In these cases, Peeler and Baird were entitled to a preliminary examination under MCL 767.4. Accordingly, the Genesee Circuit Court erred by denying Peeler's and Baird's motions to remand for a preliminary examination.

3. While the citizens grand-jury statutes, MCL 767.24(1) and MCL 767.23, specifically authorize grand juries to issue indictments, MCL 767.4, in its current form, does not. In 1949, the Legislature authorized one-man grand juries to issue indictments, but it later repealed that provision; the current version of MCL 767.4 cannot be interpreted to authorize what the Legislature has explicitly rejected. Further, MCL 767.4 clearly authorizes a judge to issue an arrest warrant, and it did not *explicitly* grant that authorization while at the same time *implicitly* authorizing a judge to issue an indictment. As further evidence that a one-man grand jury cannot initiate charges by issuing indictments, the citizens grand-jury statutes require a jury oath—a hallmark of the jury process—while the one-man grand-jury statutes do not have that requirement. For those reasons, MCL 767.3 and MCL 767.4 authorize a judge to investigate, subpoena witnesses, and issue arrest warrants, but they do not authorize a judge to issue an indictment initiating a criminal prosecution. Judge Newblatt lacked authority under MCL 767.3 and MCL 767.4 to issue indictments. Accordingly, the Genesee Circuit Court erred by denying Lyon's motion to dismiss, and there was no need to address Lyon's constitutional arguments. Although Peeler and Baird joined in Lyon's motion to dismiss in the Genesee Circuit Court, the only relief they requested in the Michigan Supreme Court was the reversal of the circuit court's order denying their motions to remand for a preliminary examination.

Genesee Circuit Court orders denying Peeler's and Baird's motions to remand for a preliminary examination and denying Lyon's motion to dismiss reversed; cases remanded to the Genesee Circuit Court for further proceedings.

Justice BERNSTEIN, concurring, agreed fully with the Court's opinion but wrote separately to address the significant procedural interests implicated in these cases. The Attorney General's office invoked obscure statutes, specifically—MCL 767.3 and MCL 767.4—to deprive defendants of their statutory right to a preliminary examination. A preliminary examination is crucial for criminal defendants in our adversarial system in that it functions, in part, as a screening device to ensure there is a basis for a defendant to face a criminal charge. Allowing the prosecution to opt out of a preliminary examination would run afoul of the basic notions of fairness underlying our adversarial system. The Court remained cognizant of the effect these decisions could have on Flint residents given the unconscionable injustice they suffered as a result of their government's betrayal. Given the magnitude of the harm suffered by Flint's residents, it was paramount to adhere to proper procedure to guarantee to the general public that Michigan's courts could be trusted to produce fair and impartial rulings for all defendants regardless of the severity of the charged crime. The prosecution cannot cut corners—here, by not allowing defendants a preliminary examination as statutorily guaranteed—in order to prosecute defendants more efficiently. The criminal prosecutions provide historical context for this consequential moment in history, and future generations will look to the record as a critical and impartial answer in determining what happened in Flint.

Justice CLEMENT did not participate due to her prior involvement as chief legal counsel for Governor Rick Snyder.

# OPINION

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

FILED June 28, 2022

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellee,

v                          No. 163667

NANCY PEELER,

     Defendant-Appellant.

_____

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellee,

v                          No. 163672

RICHARD LOUIS BAIRD,

     Defendant-Appellant.

_____

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v                                      No. 164191

NICOLAS LYON,

        Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH (except CLEMENT, J.)

MCCORMACK, C.J.

      Nancy Peeler, Richard L. Baird, and Nicolas Lyon were state employees investigated and charged for their roles in the Flint water crisis. But for some reason, they were not charged the way that almost everyone in Michigan is charged—with a criminal complaint issued by a prosecutor and followed by a preliminary examination in open court at which the accused can hear and challenge the prosecution's evidence. Instead, the prosecution chose to proceed with these cases using what have become known as the "one-man grand jury" statutes, MCL 767.3 and MCL 767.4. A Genesee County judge served as the one-man "grand" jury and considered the evidence not in a public courtroom but in secret, a Star Chamber comeback. The one-man grand jury then issued charges. To this day, the defendants do not know what evidence the prosecution presented to convince the grand jury (i.e., juror) to charge them.

      We consider two questions about the one-man grand-jury statutes. First, if charged by a one-man grand jury, is a defendant entitled to a preliminary examination? Second, can a judge issue an indictment authorizing criminal charges against a defendant?

2

In *Peeler* and *Baird*, we hold that the answer to the first question is yes. In *Lyon*, we hold that the answer to the second question is no. We therefore reverse the June 16, 2021 order of the Genesee Circuit Court denying Peeler's and Baird's motions to remand for a preliminary examination and reverse the Genesee Circuit Court's February 16, 2022 order denying Lyon's motion to dismiss. We remand all three cases to the Genesee Circuit Court for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

These prosecutions have an extremely long procedural history, most of which is not germane to the questions we answer here. Peeler, a former manager of the Early Childhood Health Section of the Michigan Department of Health and Human Services (DHHS), is charged with two counts of misconduct in office (a five-year felony), MCL 750.505, and one count of willful neglect of duty (a misdemeanor), MCL 750.478. Baird, the former "Transformation Manager" and a senior advisor to former Governor Rick Snyder, is charged with misconduct in office; perjury during an investigative-subpoena examination (a 15-year felony), MCL 767A.9; obstruction of justice (a five-year felony), MCL 750.505; and extortion (a 20-year felony), MCL 750.213. Lyon, a former director of the Michigan Department of Community Health and DHHS, is charged with nine counts of involuntary manslaughter (a 15-year felony), MCL 750.321; and one count of willful neglect of duty.

In December 2019, the Attorney General's office requested the appointment of a one-person grand jury. Genesee Circuit Chief Judge Pro Tem Duncan Beagle granted the motion and appointed Genesee Circuit Judge David Newblatt to act as the one-person grand

3

jury for a six-month term under MCL 767.3 and MCL 767.4. Judge Newblatt later extended his term for six more months.

In January 2021, Newblatt issued indictments against Peeler and Baird, and the cases were then assigned to Genesee Circuit Judge Elizabeth Kelly. Peeler and Baird moved to remand their cases for a preliminary examination, but the trial court denied the motion, holding that "indictees have no right to [a] preliminary examination." The Court of Appeals denied leave in both applications for lack of merit.

Judge Newblatt also issued an indictment against Lyon in January 2021. Lyon moved to dismiss, raising statutory arguments about the right to a preliminary examination, that the statutes do not confer charging authority upon a one-man grand jury, and that MCL 767.3 and MCL 767.4 violate the separation-of-powers doctrine and the right to due process. The trial court denied this motion too. Lyon filed an interlocutory application for leave to appeal in the Court of Appeals, which remains pending.

Peeler and Baird filed applications for leave to appeal in this Court, and Lyon filed a bypass application here, seeking leave to appeal prior to a decision by the Court of Appeals. We ordered oral argument on the application in each case. *People v Peeler*, 509 Mich ___ (2022); *People v Baird*, 509 Mich ___ (2022); *People v Lyon*, 509 Mich ___ (2022). In *Peeler* and *Baird*, we allowed further briefing on "whether a defendant charged with a felony after a proceeding conducted pursuant to MCL 767.3 and MCL 767.4 is entitled to a preliminary examination." In *Lyon*, we allowed further briefing on these issues:

4

(1) whether MCL 767.3 and MCL 767.4 violate Michigan's constitutional requirement of separation of powers, Mich Const 1963, art 3, § 2; (2) whether those statutes confer charging authority on a member of the judiciary; (3) whether a defendant charged after a proceeding conducted pursuant to MCL 767.3 and MCL 767.4 is entitled to a preliminary examination; and (4) whether the proceedings conducted pursuant to MCL 767.3 and MCL 767.4 violated due process, Mich Const 1963, art 1, § 17. [*Lyon*, 509 Mich ___ 16(2022).]

## II. LEGAL BACKGROUND

Whether MCL 767.3 and MCL 767.4 confer charging authority on a member of the judiciary and whether a defendant charged under those statutes is entitled to a preliminary examination are matters of statutory interpretation that we review de novo. *Millar v Constr Code Auth*, 501 Mich 233, 237; 912 NW2d 521 (2018). That means we review the issue independently, without required deference to the trial court. *Id.*

Enacted in 1917, MCL 767.3 and MCL 767.4 are part of a statutory scheme that quickly became known as the "one man grand jury" law. See, e.g., *People v Doe*, 226 Mich 5, 6; 196 NW 757 (1924) (referring to the judge "sitting as a one man grand jury"). The Legislature enacted these statutes because "regularly constituted law enforcement agencies sometimes are unable effectively and lawfully to enforce the laws, particularly with respect to corrupt conduct by officers of government and conspiratorial criminal activity on an organized and continuing basis" and "the common law 23-man grand jury is unwieldy and ineffective for the investigation of such crimes . . . ." *In re Colacasides*, 379 Mich 69, 89; 150 NW2d 1 (1967). Unlike citizens grand juries, which have a centuries-long history, Michigan's one-man grand jury has no such historical pedigree and has been

the subject of two successful constitutional challenges so far.[1]  Cf. Helmholz, *The Early History of the Grand Jury and the Canon Law*, 50 U Chi L Rev 613, 613 (1983) (tracing the use of a citizens grand jury to the year 1166); Davidow, *Dealing with Prosecutorial Discretion: Some Possibilities*, 62 Wayne L Rev 123, 126 (2017) (describing the "checkered past" of the one-man grand jury, citing *In re Oliver*, 333 US 257; 68 S Ct 499; 92 L Ed 682 (1948), and *In re Murchison*, 349 US 133; 75 S Ct 623; 99 L Ed 942 (1955)).

Despite its nickname, the word "juror" makes no appearance in the statutes, and the term "grand jury" appears only twice.  See MCL 767.3 ("Any person called before the *grand jury* shall at all times be entitled to legal counsel not involving delay and he may discuss fully with his counsel all matters relative to his part in the inquiry without being subject to a citation for contempt.") (emphasis added); MCL 767.4a ("It shall be unlawful for any person, firm or corporation to possess, use, publish, or make known to any other person any testimony, exhibits or secret proceedings obtained or used in connection with any *grand jury* inquiry conducted prior to the effective date of this act . . . .") (emphasis added).

MCL 767.3 and MCL 767.4 are wordy, but the important language in each is included here.

MCL 767.3:

> Whenever by reason of the filing of any complaint, which may be upon information and belief, or upon the application of the prosecuting attorney or attorney general, *any judge of a court of law and of record shall*

---

[1] The Legislature has since corrected the deficiencies that led to the earlier constitutional challenges.  See Davidow, *Dealing with Prosecutorial Discretion: Some Possibilities*, 62 Wayne L Rev 123, 126 (2017).

*have probable cause to suspect that any crime, offense or misdemeanor has been committed within his jurisdiction*, and that any persons may be able to give any material evidence respecting such suspected crime, offense or misdemeanor, *such judge in his discretion may make an order directing that an inquiry be made into the matters relating to such complaint . . . and thereupon conduct such inquiry.* [Emphasis added.]

MCL 767.4:

*If upon such inquiry the judge shall be satisfied that any offense has been committed and that there is probable cause to suspect any person to be guilty thereof, he may cause the apprehension of such person by proper process and, upon the return of such process served or executed, the judge having jurisdiction shall proceed with the case, matter or proceeding in like manner as upon formal complaint. The judge conducting the inquiry under section 3 shall be disqualified from acting as the examining magistrate in connection with the hearing on the complaint or indictment*, or from presiding at any trial arising therefrom, or from hearing any motion to dismiss or quash any complaint or indictment, or from hearing any charge of contempt under section 5, except alleged contempt for neglect or refusal to appear in response to a summons or subpoena. [Emphasis added.]

III. ANALYSIS

A. RIGHT TO A PRELIMINARY EXAMINATION

We agree with Peeler and Baird that the statutory language provides a right to a preliminary examination. We have said so before, although in dictum: In *People v Duncan*, 388 Mich 489, 498-499; 201 NW2d 629 (1972), overruled in part on other grounds by *People v Glass*, 464 Mich 266 (2001), we identified MCL 767.4 as a statute with "specific statutory language" providing for a preliminary examination. MCL 767.4 refers to a "hearing on the complaint or indictment" and disqualifies the judge who conducted the inquiry from being the "examining magistrate" at that hearing. It is unclear what "hearing" that language could be referring to other than a preliminary examination. Moreover, "examining magistrate" is a term of art used in other statutes, so we need not guess what it

means—an examining magistrate is a judge who conducts a preliminary examination. See, e.g., MCL 766.1 ("The state and the defendant are entitled to a prompt examination and determination *by the examining magistrate* in all criminal causes . . . .") (emphasis added).

MCL 767.4 also requires that once an accused has been apprehended, "the judge having jurisdiction shall proceed with the case, matter or proceeding in like manner as upon formal complaint." In other words, the judge should treat the one-man-grand-jury-charged case the same as a case in which a formal complaint has been filed. We know how that process works too: When a formal complaint is filed, an arrest warrant is issued, the accused is apprehended, and the court holds a preliminary examination before an information may issue. See MCL 764.1a(1) ("A magistrate shall issue a warrant or summons upon presentation of a proper complaint alleging the commission of an offense and a finding of reasonable cause to believe that the individual accused in the complaint committed that offense. The complaint must be sworn to before a magistrate or clerk."); MCL 767.42(1) ("An information shall not be filed against any person for a felony until such person has had a preliminary examination therefor, as provided by law, before an examining magistrate, unless that person waives his statutory right to an examination."). Thus, for a case to proceed "in like manner as upon formal complaint," MCL 767.4, a preliminary examination must be held unless waived by the defendant, MCL 767.42(1). See MCR 6.110(A) ("The defendant may waive the preliminary examination with the consent of the prosecuting attorney.").

There is more evidence in historical practice. We see in our cases evidence that preliminary examinations were routinely conducted after a one-person grand jury returned an indictment. See, e.g., *People v Bellanca*, 386 Mich 708, 711-712; 194 NW2d 863 (1972)

8

(defendant charged by a one-man grand jury was entitled to transcripts of witness testimony given before the grand jury before his preliminary examination on the charges); *In re Slattery*, 310 Mich 458, 464; 17 NW2d 251 (1945) ("[U]nder the laws of this State, hereinbefore referred to, the testimony is kept secret, but if the judge finds that a crime has been committed, he orders a warrant to be issued, *and an examination held in open court before a magistrate* and, if probable cause is shown, the accused is bound over for trial in the proper court.") (emphasis added); *People v McCrea*, 303 Mich 213, 224-225; 6 NW2d 489 (1942) ("As a result of the grand-jury investigation indictments were returned and warrants were issued against McCrea and other defendants. The preliminary examinations were conducted before Judge Ferguson, and McCrea and other defendants were held for trial."). And in other authorities. See, e.g., *Committee Reports (Special Committee to Study and Report Upon the One-Man Grand Jury Law)* (hereinafter *Committee Reports*), 26 Mich St B J 11, 59 (1947) ("Before there can be a trial there must be an accusation, and in Michigan this may come in either of the following three ways: a. An Indictment voted by a 23-Man Grand Jury; or b. A complaint and warrant issued in the customary way by a justice of the peace or other magistrate; or c. A complaint and warrant issued by a 'One-Man Grand Juror'. *In either of the last two instances the defendant is entitled to an examination before being bound over for trial*.") (emphasis added).

The Attorney General's office believes that because the statutory scheme requires the judge to make a finding of probable cause that the defendant committed the crime, a preliminary examination would be redundant. After all, a preliminary examination's main function is for a court to determine whether there is probable cause. But the argument confuses some basics. Probable cause to *arrest* (which MCL 767.4 requires and authorizes

9

the judge to order) is different from probable cause to *bindover* (which must be found at a preliminary examination to bind the defendant over on felony charges). "[T]he probable cause required for a bindover is 'greater' than that required for an arrest and . . . imposes a different standard of proof. . . . [T]he arrest standard looks only to the probability that the person committed the crime as established at the time of the arrest, while the preliminary hearing looks both to that probability at the time of the preliminary hearing *and* to the probability that the government will be able to establish guilt at trial." LaFave & Israel, *Criminal Procedure* (2d ed, 1992), § 14.3, pp 668-669; see also *People v Cohen*, 294 Mich App 70, 74; 816 NW2d 474 (2011) ("We disagree with the circuit court's conclusion that probable cause to support an arrest is equivalent to probable cause to bind a defendant over for trial."). So the Court of Appeals was wrong in *People v Green*, 322 Mich App 676, 687; 913 NW2d 385 (2018), when it held that the one-person grand-jury procedure "serve[s] the same function" as a preliminary examination. We overrule *Green*.

The circuit court erred by denying Peeler's and Baird's motions to remand for a preliminary examination. We therefore reverse the circuit court's order denying those motions.[2]

---

[2] Although Peeler and Baird joined in Lyon's motion to dismiss in the circuit court, the only relief they request in this Court is the reversal of the circuit court's order denying their motions to remand for an evidentiary hearing.

## B. CHARGING AUTHORITY

Lyon brings another challenge to the application of MCL 767.4: he argues that the statute does not grant the judge conducting the inquiry the authority to issue indictments. We agree.[3]

The word "indictment" appears four times in the statute, and its use is important:

> The judge conducting the inquiry under section 3 shall be disqualified from acting as the examining magistrate *in connection with the hearing on the complaint or indictment*, or from presiding at any trial arising therefrom, or *from hearing any motion to dismiss or quash any complaint or indictment*, or from hearing any charge of contempt under section 5, except alleged contempt for neglect or refusal to appear in response to a summons or subpoena. . . . Except in cases of prosecutions for contempt or perjury against witnesses who may have been summoned before the judge conducting such inquiry, or for the purpose of determining whether the testimony of a witness examined before the judge is consistent with or different from the testimony given by such witness before a court in any subsequent proceeding, or in cases of disciplinary action against attorneys and counselors in this state, any judge conducting the inquiry, any prosecuting attorney and other persons who may at the discretion of the judge be admitted to such inquiry, who shall while conducting such inquiry or while in the services of the judge or after his services with the judge shall have been discontinued, utter or publish any statement pertaining to any information or evidence involved in the inquiry, *or who shall disclose the fact that any indictment for a felony has been found* against any person not in custody or under recognizance, or who shall disclose that any person has been questioned or summoned in connection with the inquiry, who shall disclose or publish or cause to be published any of the proceedings of the inquiry *otherwise than by issuing or executing processes prior to the indictment*, or shall disclose, publish or cause to be published any comment,

---

[3] Our order to schedule oral argument on the application asked a more general question: "[W]hether [MCL 767.3 and MCL 767.4] confer charging authority on a member of the judiciary[.]" Because Lyon was charged by an indictment, it is not necessary for the disposition of this case to resolve whether MCL 767.3 or MCL 767.4 confer authority to issue charges by some other method such as a complaint.

opinion or conclusions related to the proceedings of the inquiry, shall be guilty of a misdemeanor punishable by imprisonment in the county jail not more than 1 year or by a fine of not less than $100.00 nor more than $1,000.00, or both fine and imprisonment in the discretion of the court, and the offense when committed by a public official shall also constitute malfeasance in office.  [MCL 767.4 (emphasis added).]

Perhaps not surprisingly, the statute never says a judge may issue an indictment, in specific contrast to the statutes governing citizens grand juries.  Cf. MCL 767.24(1) ("An indictment for any of the following crimes may be found and filed at any time[.]"); MCL 767.23 ("No indictment can be found without the concurrence of at least 9 grand jurors; and when so found, and not otherwise, the foreman of the grand jury shall certify thereon, under his hand, that the same is a true bill.").

Indeed, the Legislature amended the statutory scheme to authorize judges to issue indictments, but later removed that authority.  In 1949, the Legislature amended the statute to provide for three-judge grand juries and gave them express authority to issue indictments ("Provided, That orders returning Indictments shall be signed by 3 judges.").  See MCL 767.3, as amended by 1949 PA 311.  But it repealed that provision several years later.  See MCL 767.3, as amended by 1951 PA 276.  "Where the Legislature has considered certain language and rejected it in favor of other language, the resulting statutory language should not be held to explicitly authorize what the Legislature explicitly rejected."  *In re MCI Telecom Complaint*, 460 Mich 396, 415; 596 NW2d 164 (1999).

And the statute is clear about what it *does* authorize a judge to do.  If, after conducting the inquiry, "the judge shall be satisfied that any offense has been committed and that there is probable cause to suspect any person to be guilty thereof, *he may cause the apprehension of such person by proper process* . . . ."  MCL 767.4 (emphasis added).

In other words, the judge may authorize an *arrest warrant*. The statute didn't authorize the judge to issue an arrest warrant explicitly and issue an indictment at the same time implicitly.

And while the word "indictment" can be understood narrowly to mean only "[t]he formal written accusation of a crime, made by a grand jury and presented to a court for prosecution against the accused person," *Black's Law Dictionary* (11th ed), as in MCL 767.24(1) and MCL 767.23, that is not the case in MCL 767.4. MCL 761.1, which provides definitions for MCL 767.4, defines "indictment" broadly. See MCL 761.1(g):

> "Indictment" means 1 or more of the following:
>
> (*i*) An indictment.
>
> (*ii*) An information.
>
> (*iii*) A presentment.
>
> (*iv*) A complaint.
>
> (*v*) A warrant.
>
> (*vi*) A formal written accusation.
>
> (*vii*) Unless a contrary intention appears, a count contained in any document described in subparagraphs (*i*) through (*vi*).

This definition encompasses much more than a formal indictment—a charging document initiating a criminal prosecution.

The circuit court and the Attorney General's office have emphasized the purported parallels between the one-man grand-jury and the citizens grand-jury procedures. Thus, the argument goes, because the citizens grand-jury statutes authorize the issuance of indictments, so too must MCL 767.4. But we find the differences between the statutes

13

more important. As the defendants and amici note, the citizens grand-jury statutes—unlike MCL 767.4—expressly authorize the grand jurors to issue indictments and require the grand jurors to swear an oath. See MCL 767.9 (setting forth the oath to be administered to citizen grand jurors). A juror's oath is a significant part of service. See, e.g., *People v Cain*, 498 Mich 108, 123; 869 NW2d 829 (2015) ("The juror's oath involves a conscious promise to adopt a particular mindset—to approach matters fairly and impartially—and its great virtue is the powerful symbolism and sense of duty it imbues the oath-taker with and casts on the proceedings."); *id*. at 134 (VIVIANO, J., dissenting) ("The essence of the jury is, and always has been, the swearing of the oath."). The absence of this hallmark of the grand-jury process is more evidence that the one-man grand-jury statutes do not authorize a judge to initiate charges by issuing indictments.

To be sure, judges serving as one-person grand jurors have issued indictments following investigations. See, e.g., *Colacasides*, 379 Mich at 77-78 ("These documents were the evidentiary basis *upon which appellant had been indicted by Grand Juror Piggins* for conspiracy to bribe a police officer.") (emphasis added); *Green*, 322 Mich App at 681 ("Defendant was indicted by a one-person grand jury . . . ."). But the historical practice has been mixed because the procedure has also been used to authorize warrants. See, e.g., *Bellanca*, 386 Mich at 711 ("[T]he 'grand juror' ordered the issuance of a warrant for the arrest of the defendant so that he might be prosecuted for perjury and such warrant issued on that day."); *People v Dungey*, 356 Mich 686, 687, 688; 97 NW2d 778 (1959) ("[D]efendants in this case were tried in the circuit court of Genesee county *on an information* charging them with conspiracy to violate the laws of the State relating to the suppression of gambling" after "an investigation conducted in said county by a visiting

circuit judge, under the provisions of [MCL 767.3]," after which "*the judge issued his warrant for the arrest of 11 individuals*, including the four defendants in this case[.]") (emphasis added); *People v Birch*, 329 Mich 38, 41; 44 NW2d 859 (1950) ("Thereafter Judge Leibrand proceeded to conduct the investigation. Witnesses were called and examined by him, findings made, *and warrants issued including the warrants involved in the above entitled cases*.") (emphasis added). It seems that the power of a judge conducting an inquiry to issue an indictment was simply an unchallenged assumption, until now. See generally *Committee Reports*, 26 Mich St B J at 59 (providing that a "One-Man Grand Juror" may issue a complaint or warrant, while only a citizens grand jury may vote to issue an indictment).

For these reasons, we conclude that MCL 767.4 does not authorize a judge to issue an indictment initiating a criminal prosecution.[4] The trial court therefore erred by denying Lyon's motion to dismiss. Given our statutory holding, we need not address Lyon's constitutional arguments that MCL 767.4 violates separation of powers and due process. See *People v McKinley*, 496 Mich 410, 415-416; 852 NW2d 770 (2014) (applying "the widely accepted and venerable rule of constitutional avoidance").

## IV. CONCLUSION

MCL 767.3 and MCL 767.4 authorize a judge to investigate, subpoena witnesses, and issue arrest warrants. But they do not authorize the judge to issue indictments. And if a criminal process begins with a one-man grand jury, the accused is entitled to a preliminary

---

[4] We use "indictment" to refer to a formal indictment issued by a one-person grand jury and not in the broader sense it is used in MCL 761.1(g).

examination before being brought to trial.  Accordingly, we reverse the Genesee Circuit Court's orders denying Peeler's and Baird's motions to remand for a preliminary examination and denying Lyon's motion to dismiss.  We remand to the Genesee Circuit Court for further proceedings consistent with this opinion.

Bridget M. McCormack
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v                                        No. 163667

NANCY PEELER,

        Defendant-Appellant.

_____

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v                                        No. 163672

RICHARD LOUIS BAIRD,

        Defendant-Appellant.

_____

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v                                        No. 164191

NICOLAS LYON,

        Defendant-Appellant.

_____

BERNSTEIN, J. (*concurring*).

      I concur fully with the Court's opinion but write separately to address the significant

interests implicated in this case.  Today, this Court recognizes what we have always known

to be true: procedure matters.  It is, in fact, the foundation of our adversarial process.  Indeed, our adversarial system of justice "is premised on the well-tested principle that truth—as well as fairness—is best discovered by powerful statements on both sides of the question." *Penson v Ohio*, 488 US 75, 84; 109 S Ct 346; 102 L Ed 2d 300 (1988) (quotation marks and citations omitted).

However, the Attorney General has invoked obscure statutes, MCL 767.3; MCL 767.4, to deprive these defendants of their statutory right to a preliminary examination.  "A preliminary examination functions, in part, as a screening device to insure that there is a basis for holding a defendant to face a criminal charge." *People v Weston*, 413 Mich 371, 376; 319 NW2d 537 (1982).  Our court rules state that a defendant is entitled to "subpoena and call witnesses, offer proofs, and examine and cross-examine witnesses at the preliminary examination."  MCR 6.110(C).

Clearly, and as this Court's decision aptly recognizes, a preliminary examination serves a crucial function for criminal defendants in our adversarial system.  It allows defendants to learn about the specific criminal charges they face, confront allegedly incriminating evidence, and prepare a defense.  The prosecution argues that the Legislature, through the statutes in question, has given it the discretion to opt out of a preliminary examination, as the prosecution did here.  This assertion is quite alarming, and were it true, the prosecution would have the power to decide whether to grant a defendant permission to probe and challenge the charges against them before being formally indicted.  Such a result runs afoul of the basic notions of fairness that underlie our adversarial system.  I do not believe we can tolerate such a procedural offense.

At the same time, this Court remains cognizant of the impact that this decision might have on the residents of Flint, who have suffered an unconscionable injustice. Residents of Flint have been supplied with water that was contaminated with toxic levels of lead, E. coli, and Legionella bacteria. *Mays v Governor of Michigan*, 506 Mich 157, 201; 954 NW2d 139 (2020) (BERNSTEIN, J., concurring). Despite evidence of contamination, state officials denied that the water was contaminated. *Mays*, 506 Mich at 169-170 (opinion by BERNSTEIN, J.). Later, officials allegedly manipulated data evidencing water contamination and continued to lie to Flint residents. *Id*. at 175. Research suggests that the death toll has been undercounted. See Childress, *We Found Dozens of Uncounted Deaths During the Flint Water Crisis. Here's How.*, PBS Frontline (September 10, 2019), available at <https://www.pbs.org/wgbh/pages/frontline/interactive/how-we-found-dozens-of-uncounted-deaths-during-flint-water-crisis/> (accessed June 3, 2022) [https://perma.cc/H2U3-J3J8]. Lead exposure can also impact fertility rates, birth outcomes, and childhood development. See Matheny, *Study: Flint Water Killed Unborn Babies; Many Moms Who Drank It Couldn't Get Pregnant*, Detroit Free Press (September 20, 2017), available at <https://www.freep.com/story/news/local/michigan/flint-water-crisis/2017/09/20/flint-water-crisis-pregnancies/686138001/> (accessed June 3, 2022) [https://perma.cc/U8N4-HQCR]. We may not know the extent to which the contaminated water has detrimentally affected the health and well-being of Flint residents because the effects of lead poisoning can be long-term and slow to fully develop. See Harvard TH Chan School of Public Health, *High Levels of Lead in Bone Associated With Increased Risk of Death From Cardiovascular Disease in Men*, 2009 Press Release, available at <https://www.hsph.harvard.edu/news/press-releases/high-levels-lead-bone-risk-of-death-cardiovascular-disease-men/> (accessed June 3,

2022) [https://perma.cc/ZMW9-KTJ2]; Carroll, *What the Science Says About Long-Term Damage From Lead*, New York Times (February 8, 2016), available at <https://www.nytimes.com/2016/02/09/upshot/what-the-science-says-about-long-term-damage-from-lead.html> (accessed June 3, 2022) [https://perma.cc/JD8R-GZH9].  Even after Flint's water was declared safe for consumption, Flint residents have remained hesitant to use the water.  Robertson, *Flint Has Clean Water Now.  Why Won't People Drink It?*, Politico (December 23, 2020), available at <https://www.politico.com/news/magazine/2020/12/23/flint-water-crisis-2020-post-coronavirus-america-445459> (accessed June 3, 2022) [https://perma.cc/Y48U-LLQ7].  If the allegations can be proved, it is impossible to fully state the magnitude of the damage state actors have caused to an innocent group of people—a group of people that they were entrusted to serve.  The Flint water crisis stands as one of this country's greatest betrayals of citizens by their government.

Yet the prosecution of these defendants must adhere to proper procedural requirements *because* of the magnitude of the harm that was done to Flint residents.  Proper procedure is arguably most necessary in cases of great public significance, particularly where the charged crimes have been characterized as especially heinous and where the court proceedings are likely to be heavily scrutinized by the general public.  In such cases, adherence to proper procedure serves as a guarantee to the general public that Michigan's courts can be trusted to produce fair and impartial rulings for all defendants, regardless of the severity of the charged crime.

The tenets of our system of criminal procedure are only as strong as our commitment to abide by them.  Indeed, there would be little credibility to a criminal process that purports to strike a fair balance between adversaries if the guarantees underpinning that criminal

process—such as the statutory right to a preliminary examination—could be done away with at the whims of the prosecution. Put simply, the prosecution's power to charge individuals and haul them into court is constrained by certain preconditions. We recognize today that, under these circumstances, one of those preconditions is required by statute—a preliminary examination. The prosecution cannot simply cut corners in order to prosecute defendants more efficiently. To allow otherwise would be repugnant to the foundational principles of our judicial system. This Court's decision reaffirms these principles and makes clear that the government's obligations remain steadfast for all criminal defendants.

In the end, such a prominent criminal prosecution will have a significant impact on the public at large. This criminal prosecution will serve as a historical record. Whether we realize it or not, courts provide historical context to consequential moments in history. See Rhodes, *Legal Records as a Source of History*, 59 ABA J 635, 635 (June 1973) ("The lawyer unwittingly is an agent of history."). What is happening before us cannot be understated. Former state officials, some of whom were elected, are being criminally prosecuted for their alleged roles in perpetrating an egregious injustice that resulted in the various ailments and even deaths of the people they served or represented. Future generations will look to this record as a critical and impartial answer to the question: what happened in Flint? For both their sake and ours, we should leave no question unanswered and no stone unturned.

For these reasons, I concur.

Richard H. Bernstein

CLEMENT, J., did not participate due to her prior involvement as chief legal counsel for Governor Rick Snyder.

5